UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/31/22
```

United States,

—v—

Dorfi Montesino,

               Defendant.

18-cr-526 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

    Defendant Dorfi Montesino filed a motion seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons that follow, the motion is DENIED.

**I.    BACKGROUND**

    In July 2018, Mr. Montesino was arrested for his involvement with a drug trafficking organization that trafficked large quantities of heroin and cocaine from the Dominican Republic and Mexico into New Jersey and New York. PSR ¶¶ 14, 18-20.[1] Defendant was intercepted multiple times in March 2018 over Title III wires coordinating business for the organization. *Id.* ¶¶ 18-19.

    He was charged with one count of conspiring to distribute and possess with intent to distribute one kilogram and more of mixtures and substances containing a detectable amount of heroin, and five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(b)(l)(A), 846. Dkt. No. 3. Pursuant to a plea agreement, he pled guilty to the lesser included offense of conspiring to distribute and possess

---

[1] The factual recitations set forth in the PSR were adopted without objection at Mr. Montesino's sentencing. Sent. Tr. at 5.

1

with intent to distribute 500 grams and more of mixtures and substances containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841 (b)(1)(B), 846.  Plea Tr. at 2-3.  The agreement stipulated that Defendant was involved in distributing between 3.5 and 5 kilograms of cocaine.  PSR ¶ 6.

At sentencing in February 2020, the Court calculated a Guidelines range of 57 to 71 months with an offense leave of 25 and a criminal history category of I.  Sent. Tr. at 6.  The Court noted, however, that it was bound by the 60-month mandatory minimum under 21 U.S.C. § 841(b)(1)(B).  *Id*. at 6, 15.  Defendant also withdrew his prior request for a *Fatico* hearing on whether he was safety-valve eligible and conceded the applicability of the 60-month mandatory minimum. *Id*. at 6.  Accordingly, the Court sentenced Mr. Montesino to the mandatory minimum term of 60 months' imprisonment.  In doing so, the Court noted several mitigating factors which warranted the lowest possible sentence—such as the fact that Mr. Montesino accepted responsibility, his lack of significant prior criminal history, the start of his "very positive rehabilitative process through programs in prison," and his "significant family ties and important family responsibilities."  *Id*. at 15-16.  But the Court also considered that this was a "serious offense," involving "a drug trafficking organization that brings a staggering quantity of heroin and cocaine into the Paterson area." *Id*. at 15.  As the Court explained: "These drugs are dangerous and destructive, and I do believe that anyone involved in their distribution to our communities must face significant punishment in order to protect the public, deter, promote respect for the law, and provide just punishment for the offense." *Id*.

On April 27, 2021, Mr. Montesino submitted a letter to the warden of Fort Dix seeking to "formally initiate the administration [sic] remedy process by submitting a request for compassionate release via the BP 8 Form."  Dkt. No. 351-1.  After not receiving a response

within 30 days, Mr. Montesino filed a *pro se* motion for compassionate release via mail, and the Court appointed counsel on July 29, 2021. Dkt. No. 335. Defendant filed a counseled motion on November 8, 2021. Dkt. No. 346. The Government opposed on November 22, 2021. Dkt. No. 347. Defendant filed a counseled reply on December 13, 2021. Dkt. No. 351.

## II.     DISCUSSION

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011) (internal citation and quotation marks omitted). The compassionate-release statute creates one such exception: It allows a court to "reduce" a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i)–(ii). Under the First Step Act, defendants serving their sentence may move the Court for compassionate release after they have exhausted their administrative remedies or thirty days have lapsed from the receipt of a compassionate release request by the warden. *United States v. Scparta*, No. 18-cr-578 (AJN), 2020 WL 1910481, at *4 (S.D.N.Y. Apr. 20, 2020).

In order for a defendant to be eligible for a reduction of their term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), there must be "extraordinary and compelling reasons" warranting such a reduction. The Second Circuit held that the Sentencing Commission's policy statement §1B1.13 Note 1(D), which instructs that the power to determine what reasons are extraordinary and compelling remains exclusively with the Bureau of Prisons director, is no longer applicable. *See United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020). Therefore, this Court may

"independently . . . determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling.'" *Id.*

Moreover, presenting an extraordinary and compelling reason for release is only one of the requirements for a reduction in one's prison sentence under 18 U.S.C. § 3582(c)(1)(A). *See United States v. Ebbers*, 432 F. Supp. 3d 421, 430–31 (S.D.N.Y. 2020). The Court must also determine that granting release is consistent with the factors set forth in 18 U.S.C. § 3553(a) and the applicable policy statements of the Sentencing Commission to determine if release is appropriate. *See* 18 U.S.C. § 3582(c)(1)(A). In particular, the Court must consider whether a reduced sentence would still "reflect the seriousness of the offense . . . promote respect for the law . . . provide just punishment for the offense" and "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A), (B).

Defendant argues that "his rehabilitation, the nature of his incarceration during the Covid-19 pandemic, and [his] role as the only caretaker for his mother and son" warrant extraordinary and compelling reasons for his compassionate release. Dkt. No. 346 at 13. The Court concludes that the Defendant has not established the existence of an extraordinary and compelling reason that warrants compassionate release.

The Court continues to be sensitive to the fact that the COVID-19 pandemic has altered the circumstances of incarceration. But as this Court has previously noted, "restrictions on visitation or other pandemic-related measures taken by prisons will not amount to extraordinary circumstances for most defendants who have recovered from or been vaccinated against COVID-19." *United States v. Cardenas*, No. 17-CR-339 (AJN), 2021 WL 3722761, at *3 (S.D.N.Y. Aug. 23, 2021). Mr. Montesino argues his sentence has been more punitive than anticipated, due to a lack of programming and connection with family, and cites the general risk of COVID-19

4

while incarcerated. As this court has previously noted, such "arguments—which are not rooted in an individualized risk of severe illness— cut too broadly. Under [Defendant's] reasoning, all federal inmates in the country could establish extraordinary and compelling circumstances by citing to the statute, 'a result that does not remotely comply with the limited scope of compassionate release.'" *United States v. Francisco-Ovalle*, No. 18-CR-526 (AJN), 2021 WL 123366, at *2 (S.D.N.Y. Jan. 13, 2021) (quoting *United States v. Haney*, 454 F. Supp. 3d 316, 322-23 (S.D.N.Y. 2020).

Mr. Montesino does not contend that he suffers from any underlying health issues that would increase his risk for severe complications from COVID-19. Rather, Mr. Montesino has twice recovered from the virus—after experiencing mild to moderate symptoms—and has recently taken the important step of getting vaccinated. Dkt. No. 346 at 13-15; Dkt. No. 351-2. Accordingly, Mr. Montesino is not "the rare case in which the pandemic will amount to extraordinary circumstances for a defendant who does not face heightened medical risks from COVID-19." *Cardenas*, 2021 WL 3722761, at *3; *see also United States v. Rodriguez*, No. 16 Cr. 07 (AJN), 2020 WL 7640539, at *4 (S.D.N.Y. Dec. 23, 2020) ("[That Defendant] has already apparently recovered from COVID-19 and has few risk factors for severe illness means that the risks of continued incarceration are lesser for him than for many other inmates.").

Mr. Montesino also argues his desire to care for his mother and son warrant an extraordinary and compelling reason to grant relief. The Court has found that the need to care for one's aging and sick relatives "may, in certain circumstances, warrant a finding that an extraordinary and compelling reason exists." *United States v. Yoda*, No. 15-CR-95 (AJN), 2020 WL 5502325, at *2 (S.D.N.Y. Sept. 11, 2020). In this case, however, the circumstances do not merit such a conclusion. Defendant states that he is "the only caretaker for his mother and son."

5

Dkt. No. 346 at 13. But this assertion is undermined by the fact that Mr. Montesino's son lives with his wife, the child's stepmother, who is "doing all she can to care for" the child. *Id.* at 18. Moreover, Mr. Montesino's mother receives care from home health aides and additional care by Mr. Montesino's wife when possible. Dkt. No. 346 at 17; Dkt. No. 351 at 10.

The Court is sensitive to the hardships posed on the family members of incarcerated individuals, and Mr. Montesino's desire to care for the emotional well-being of his son and his aging mother is admirable. But Mr. Montesino's concern "applies broadly to incarcerated persons and does not in itself provide extraordinary and compelling reasons justifying release." *Francisco-Ovalle*, 2021 WL 123366, at *3; *see also United States v. John*, No. 15-CR-208 (CM), 2020 WL 6581217, at *2 (S.D.N.Y. Nov. 10, 2020) (noting that while "the Court has been freed by *Brooker* to consider the myriad of family circumstances that might warrant granting compassionate release, § 3582(c)(1)(A)(i) still only authorizes release where the family circumstances are truly 'extraordinary and compelling,' and not merely the inevitable circumstances families face when a family member is incarcerated"). As other courts have noted, "[b]eing separated from your wife and children and unavailable to care for aging parents are but two of the sad and inevitable consequences of incarceration." *John*, 2020 WL 6581217, at *2.

Finally, while the Court commends Mr. Montesino's efforts at rehabilitation, *see* Dkt. No. 346 at 15-16, considering the other factors, the Court concludes that Mr. Montesino is not able to satisfy the high bar of proving that an extraordinary and compelling reason warranting

6

compassionate release exists. In sum, the Defendant has not established that extraordinary circumstances warrant the relief he seeks, and his motion must be denied on that basis.[2]

### III. CONCLUSION

For the reasons stated above, Defendant's motion for compassionate release is DENIED. This resolves Dkt. No. 346.

SO ORDERED.

Dated: January 31, 2022
New York, New York

_____
ALISON J. NATHAN
United States District Judge

---

[2] Because the Court concludes that Mr. Montesino has not established an extraordinary and compelling reason for his release, the Court need not consider whether the Section 3553 factors weigh in favor of granting relief nor Mr. Montesino's alternative request for home confinement. *See* Dkt. No. 351 at 13.